NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-533

J. QUENTIN SIMON, ET UX.

VERSUS

BUCKLEY CONSTRUCTION, LLC, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20085623
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

SHANNON J. GREMILLION
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Marc T. Amy, and Shannon J. Gremillion, Judges.

AFFIRMED AS AMENDED.

Daniel James Caruso
Christopher B. Conley
Simon, Peragine, Smith & Redfearn, L.L.P.
1100 Poydras St., 30th Flr.
New Orleans, LA 70163-3000
(504) 569-2030
COUNSEL FOR DEFENDANTS/APPELLEES:
    Patrick Buckley
    Buckley Construction, LLC

**J. Quentin Simon**
**Attorney at Law**
**P. O. Drawer 52851**
**Lafayette, LA 70505-2851**
**(337) 235-3200**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **J. Quentin Simon**
    **Elizabeth Montgomery Simon**

**Frances James Benezech II**
**Attorney at Law**
**P. O. Box 52921**
**Lafayette, LA 70505-2921**
**(337) 504-4915**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Mitchell J. Dautreuil**
    **Grand Point Industries, LLC**

**GREMILLION, Judge.**

In this construction-defect litigation, the plaintiffs/appellants, J. Quentin Simon and Elizabeth Montgomery Simon, appeal the judgment in their favor against defendants/appellees, Mitchell Dautreuil and Grand Point Industries, LLC (Grand Point), which also granted an exception of no right of action filed by the defendants/appellees. For the reasons that follow, we affirm as amended.

## FACTS AND PROCEDURAL HISTORY

In May 2006, the Simons contracted with Buckley Construction of Broussard, Louisiana, to repair and upgrade their fire-damaged home in Lafayette at a cost of $277,444.83.[1] Buckley estimated $3,500.00 for roof repairs. The existing roof was flat. Buckley had no experience with flat roofs, so it subcontracted the roofing work to Grand Point through its principal, Mr. Dautreuil, who estimated the cost to be $23,120.00. Buckley did not return to the Simons with a change order, but decided to absorb the additional cost of the roof repairs from the remaining $257,824.83.

The job specifications divided the home's roof into areas, designated "A" through "G." As the roof is flat, some areas had drains. The specifications called for Grand Point to install a "tapered system" in areas C, D, and G to provide pitch that would direct any water to the drains or over the edge. The tapered system consisted of Styrofoam sheets laid on the plywood structure. These Styrofoam panels are installed in a manner that creates, at a minimum, a one-quarter- to one-half-inch-per-foot pitch or slope. During the course of the project, it was determined that three areas needed no repair.

---

[1] The contract was not supplied with the record on appeal nor were any other exhibits. Plaintiffs/appellants designated the record and did not designate that the exhibits be supplied to the court.

Sometime after the work was completed, the Simons contacted Patrick Buckley, the principal of Buckley Construction, and advised him that some areas of the roof were holding water. Mr. Buckley inspected the roof and found that areas A, C, D, and G were holding water. In some areas, the water was ponding within inches of the drains, and those drains were not obstructed. All of these areas had been repaired by Grand Point. Mr. Buckley opined that those roof areas were not really tapered. He further ascertained that the water actually pooled below the drains inlets, which were set too high in relation to the surrounding roofing.

Mr. Buckley contacted Mr. Dautreuil, who attempted several fixes for the problems. An overlay of the roofing was attempted, which sought to establish the necessary pitch or taper. However, according to Mr. Buckley, the existing material was not prepared properly, so the adhesive used to install the overlay was not making contact with the underlying material. After several calls from Mr. Buckley, Mr. Dautreuil no longer returned his calls and quit returning to the Simons' home. Eventually, Buckley attempted to retain another contractor to repair the roof.

The Simons contacted Mr. Scott George of Ace Roofing. Mr. George inspected the roof and also found evidence of ponding and improperly sealed seams. Mr. George testified that there were some seams that, when stepped upon, would squirt water that had seeped into them. He also noticed that the membrane near the edge of the section over the garage had not been installed in a manner that would seal the flashing at the edge. Ace Roofing repaired the Simons' roof in 2012 at a cost of $56,779.00, but that included the entire roof and not just the sections replaced by Grand Point. No testimony was offered regarding the cost of re-roofing those sections that had been found to hold water.

Mr. Dautreuil's version of events differed dramatically from Mr. Buckley's. He testified that after the roof was completed, he went to inspect the roof twice after Mr. Buckley notified him that there was an issue. He testified to removing "a couple of gallons of acorns and leaves out of the drain system." He told Mr. Buckley that scuppers needed to be installed in case the drains clogged again. After his two visits to the home, Mr. Dautreuil testified, he was told by Mr. Buckley that he was not allowed back on the premises.

This litigation was initiated in October 2008. The Simons initially sued Buckley and Mr. Buckley personally. In December 2008, they amended to sue Grand Point and again in 2011 to sue Mr. Dautreuil personally. Buckley and Mr. Buckley asserted a cross-claim against Mr. Dautreuil and Grand Point in which they essentially pointed their fingers at Grand Point, alleging that the work was the exclusive province of Grand Point. In March 2011, they again amended to allege that their home had been put up for sale, but the buyers withdrew their offer of $945,000.00 after inspecting the roof. This, they alleged, cost them a profit of $675,000.00. Grand Point and Mr. Dautreuil answered the amended demands and asserted that the Simons' demands "are untimely." Buckley and the Simons settled the demands for $10,000.00, and Buckley assigned its rights to the Simons. Trial moved forward against Mr. Dautreuil and Grand Point. Following trial, the trial court issued written reasons for its ruling. It found, in pertinent part:

> The contract between Buckley Construction and the Simons provides the following:
>
> > 12.2 The Contract documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and Contractor, (2) between the Owner and a Subcontractor or Sub-subcontractor or (3) between any persons or entities other than the Owner and Contractor.

3

Thus, the only contractual relationship which exists in this matter is between Buckley Construction, LLC as the Contractor and the Simons as Owners. The Simons had no relationship with Grand Point Industries or Mitchell Dautreil [sic]. Buckley Construction is the sole party liable to the Simons and the only party with the ability to recover against Grand Point Industries. Thus, the Exception of No Right of Action filed by Grand Point Industries and Mitchell Dautreil [sic] as to the Simons' claims is granted. The Simons' claim for damages existed only against Buckley Construction, and that claim was settled for $10,000.00. The Simons may proceed in this matter only as to the third party claims assigned to them by Buckley Construction.

In any event, even if the Simons did have a claim directly against Grand Point Industries, the Simons' contract with Buckley Construction indicated that they paid for $3,500.00 allotted to roof repair. Any overage on the costs of the roof were absorbed by Buckley Construction and did not increase the overall cost of the project to the Simons. Thus, in all actuality, the Simons received a roof valued at $23,120.00 for a cost to them of only $3,500.00. Additionally, the Simons had the benefit of the use of the roof for six years without any evidence that the roof actually failed.

However, in the present case, the Simons stand in the shoes of Buckley and can only collect from Grand Point Industries and Dautreil [sic] the damages Buckley incurred flowing from the defective roof. It is important to remember that the contract submitted by Buckley Construction to the Simons grossly underestimated the amount to be allotted to roofing repair at only $3,500.00. Mr. Buckley agreed that some time [sic] after the contract was signed he learned that this amount was insufficient to cover the roof repair and that his company would have to absorb the loss resulting from the underestimation of roofing costs. The amount paid to Grand Point Industries was approximately $19,620.00 more than originally accounted for by Buckley Construction. It is clear that because of this error in the initial bid by Buckley Construction, that it was in Buckley's best interest to keep the cost of the roof repairs by Grand Point as low as possible. Buckley's interest in keeping the price down in order to prohibit further losses lends credibility to Mr. Dautreill's [sic] testimony that both Buckley and Mr. Simon were very involved with the roofing process and knew of the issues. Dautreil [sic] testified that Buckley and Simon were aware that the roof was not being installed to code.

This Court finds that Buckley was aware of and authorized the method of repair of the roof by Dautreil [sic]. The roof was clearly adequate for six years, and there is no real evidence of the roof failing, leaking or damaging the inside of the home. In essence, Buckley was

4

responsible via his contract with the homeowners for paying for the roof and he got the roof he bargained for, thus the amount paid to Dautreil [sic] for installation is not considered as damages by this Court.

On the other hand, there is evidence that the roof was improperly installed, that it was holding water and Buckley did provide compensation to the homeowners for these defects. In balancing all of these factors, this Court finds that any losses sustained by Buckley Construction are limited to reimbursement of the $10,000.00 paid to the Simons' [sic] in settlement of this matter. Because the Simons now stand in the shoes of Buckley Construction, their claims against Grand Point Industries are likewise limited to $10,000.00.

This Court finds that Grand Point Industries, LLC is ordered to pay Quentin Simon and Elizabeth Montgomery Simon the sum of $10,000.00, plus court costs. In addition, this Court would award an expert fee for Fabian Patin's trial testimony in the amount of $800.00. This Court denies the claim for attorney fees, as there is no evidence of fraud in this matter.

## ASSIGNMENTS OF ERROR

The Simons assign the following errors they contend the trial court committed:

1. The trial court erred in sustaining the exception of no cause of action [sic] on behalf of Defendants-Appellees Grand Point Industries, LLC, and Mitchell Dautreuil.

2. The trial court erred in awarding to Plaintiffs-Appellants damages of $10,000 rather than the full replacement cost of the defectively installed roof.

3. The trial court erred in declining to award to Plaintiffs-Appellants the full amount of their expert fees, attorney's fees, and legal interest.

## ANALYSIS

The trial court maintained an exception of no right of action in favor of Dautreuil and Grand Point, even though no pleading entitled as such was filed; rather, those parties had answered the demands and asserted, as affirmative defenses, the fact that the plaintiffs' demands failed to state a cause of action.

5

The Simons claim that the agreement between Buckley and Grand Point constituted a stipulation pour autri. "A contracting party may stipulate a benefit for a third person called a third party beneficiary." La.Civ.Code art. 1978. We reject the Simons' argument that the contract between Buckley and Grand Point stipulates any benefit for the Simons. The contract merely obligated Grand Point to install the roof. While the Simons undoubtedly benefit from having a roof on their home, the benefit the contract contemplated was that Grand Point would relieve Buckley of the need to become educated in the art of flat roof installation.

We disagree with the Simons that the exception of no right of action should not have been granted. There are very lenient formal requirements of an exception of no right of action. *See* La.Code Civ.P. art. 924. Assuming *arguendo* that the formal requirements were not met, the trial court can supply an exception of no right of action on its own. La.Code Civ.P. art. 927(B). The contract between the Simons and Buckley clearly and unambiguously stated that it did not create a contractual relationship between the Simons and any subcontractor.

But for the rights assigned to the Simons by Buckley, that would have effectively ended the litigation. Only Buckley had a contractual relationship with Grand Point. Only Buckley had a right to pursue a breach-of-contract demand against Grand Point, because the obligation of Grand Point to properly install the roof was owed to Buckley. Buckley could not assign to the Simons rights greater than it had. *See Freeman v. Block "T" Operating, LLC*, 13-58 (La.App. 3 Cir. 7/10/13), 118 So.3d 1279, *writ denied*, 13-1933 (La. 11/8/13), 125 So.3d 455. Its only right was to recover the extent of its loss, and that loss was $10,000.00, the amount it paid to settle the Simons' claim.

6

By their third assignment of error, the Simons argue that they should have been awarded expert witness fees, attorney fees, and legal interest. The Simons argue that they are entitled to an award of attorney fees based upon the fraud they allege was committed by Dautreuil or Grand Point. The trial court found that the Simons failed to prove fraud on the defendants' part, and we agree. Improper installation of a roof is not fraud. "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La.Civ.Code art. 1953. The Simons made no attempt to prove such intent on Dautreuil's or Grand Point's part. This assignment of error lacks merit.

"The court shall award interest in the judgment as prayed for or as provided by law." La.Code Civ.P. art. 1921. The trial court has no discretion in awarding legal interest. *Odom v. City of Lake Charles*, 00-1050 (La.App. 3 Cir. 1/31/01), 790 So.2d 51, *writ denied*, 01-1198 (La. 6/22/01), 794 So.2d 787. The court of appeal has authority to amend a judgment to rectify such an error. *Dufrene v. Duncan*, 93-403 (La.App. 1 Cir. 3/11/94), 634 So.2d 19. We, therefore, amend the judgment to provide for an award of legal interest from the date of Buckley's demand against Grand Point until paid, as the Simons' demands against Grand Point arise from the assignment of rights from Buckley.

Lastly, the Simons argue that the trial court erred in its award of expert witness fees. Louisiana Revised Statutes 13:3666 governs the awarding of expert witness fees:

> A. Witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof, shall receive additional compensation, to be fixed by the court, with

7

reference to the value of time employed and the degree of learning or skill required.

B. The court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment either:

(1) From the testimony of the expert relative to his time rendered and the cost of his services adduced upon the trial of the cause, outside the presence of the jury, the court shall determine the amount thereof and include same.

(2) By rule to show cause brought by the party in whose favor a judgment is rendered against the party cast in judgment for the purpose of determining the amount of the expert fees to be paid by the party cast in judgment, which rule upon being made absolute by the trial court shall form a part of the final judgment in the cause.

C. In either manner provided in Subsection B, the court shall also determine and tax as costs, to be paid by the party cast in judgment, the reasonable and necessary cost of medical reports and copies of hospital records.

D. In all civil cases in which the trial court, on its own motion or on motion of a party, has appointed a person who is registered as a professional land surveyor, pursuant to R.S. 37:693(B)(4), to be called as an expert to assist it in the adjudication of any case in which professional land surveying skills may aid the court, the court shall make arrangements for the timely payment of reasonable and customary fees for the services sought to be rendered.

The award of expert witness fees is subject to review under the abuse-of-discretion standard. *Raymond v. Gov't Employees Ins. Co.*, 09-1327 (La.App. 3 Cir. 6/2/10), 40 So.3d 1179, *writ denied*, 10-1569 (La. 10/8/10), 46 So.3d 1268. Courts consider the amount of time spent preparing for trial, the amount of time actually spent in court, the extent and nature of the work performed, the expert's qualifications, the complexity of the matter, the helpfulness of the expert's report and testimony, and awards to experts in similar cases. *Id.* In particular, the Simons object to the trial court's failure to award expert witness fees for Mr. Scott George's testimony. The Simons failed to elicit testimony from Mr. George as to

the amount of time he spent preparing for trial. They failed to introduce any invoices from him reflecting his charges. No rule to tax Mr. George's fees as costs was filed. Because the Simons failed to avail themselves of either method of quantifying expert witness fees set forth in La.R.S. 13:3666(B), we are precluded from awarding such costs.

Accordingly, the judgment of the trial court is affirmed as amended to award legal interest to plaintiffs/appellants. All costs of this matter are taxed to Plaintiffs/Appellants, J. Quentin Simon and Elizabeth Montgomery Simon.

**AFFIRMED AS AMENDED.**